DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DEBRA C. GAUSE, | ) | C/A No. 4:08-0148-PMD-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN OF CAMILLE GRIFFIN CORRECTIONAL INSTITUTION, | ) ) | |
| | ) | |
| Respondent. | ) ) | |

Petitioner, Debra C. Gause ("Petitioner/Gause"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed her petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on January 16, 2008. Respondent filed a motion for summary judgment on June 12, 2008, along with supporting memorandum. The undersigned issued an order filed June 13, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if she failed to respond adequately. On July 18, 2008, Petitioner filed a response to Respondent's motion for summary judgment. On July 15, 2008, and July 21, 2008, Petitioner filed an affidavit and a letter with attachments, respectively.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The procedural history as set forth by the Respondent in his memorandum has not been seriously disputed by the Petitioner in her responses. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent.

Petitioner is presently confined to Graham Correctional Institution pursuant to Orders of Commitment from the Clerk of Court from Florence County. At the April 1982 term, the Florence County Grand Jury issued a three-count indictment of Petitioner for conspiracy to commit armed robbery, armed robbery, and murder (82-GS-21-0333).

Petitioner was represented at the trial level by Public Defenders John S. DeBerry and Ernest B. Hinnant. From October 6 to 8, 1982, Petitioner was tried before the Honorable Luke N. Brown, Jr., and a jury. The jury convicted Petitioner as charged. (Tr. 301). Judge Brown then sentenced Petitioner to five (5) years for conspiracy, twenty (20) years for attempted armed robbery, and life imprisonment for murder. (Tr. 304).

Petitioner filed a Notice of Appeal with the South Carolina Supreme Court. She was represented on direct appeal by Appellate Defender John L. Sweeny. The state supreme court affirmed her convictions and sentences by opinion dated May 3, 1984. State v. Gause, Memo. Op. No. 84-MO-83 (S.C. May 3, 1984).

Petitioner next filed an Application for Post-Conviction Relief ("APCR") on May 15, 1984 (84-CP-21-0584), in which she asserted the following issues:

1. Applicant did not receive a fair trial because certain witnesses where not allowed to testify on her behalf.

2. Applicant was unaware that any crime occurred until after it was over; her codefendant placed all of the blame on her.

    3.    Applicant's sentence was excessive in comparison with the penalty imposed upon her co-defendant.

The State filed a Return and Motion to Dismiss dated November 15, 1984.

An evidentiary hearing in Petitioner's PCR was held before the Honorable J. Woodrow Lewis on November 29, 1984. Petitioner was present and represented by appointed counsel R. Dean Welch, Esquire. At the hearing, Petitioner took the stand and withdrew her application. Judge Lewis issued an Order of Dismissal on January 8, 1985, in which he found the withdrawal knowing and voluntary and dismissed the APCR with prejudice. (See Order of Dismissal).

Petitioner next filed a second Application for Post-Conviction Relief ("APCR2") on November 10, 1988 (88-CP-21-1550), in which she asserted the following issues:

    1.    Ineffective Assistance of Counsel. Applicant feels that she was not tried fairly and/or properly.

    2.    Applicant states that she was unaware of said crime until after it happened; and

    3.    Applicant feels that she received an excessive sentence.

The Honorable John H. Waller, Jr., issued a Conditional Order of Dismissal on May 5, 1989. Petitioner appealed that order, but then withdrew it as it was premature. On October 6, 1989, the Honorable Don. S. Rushing issued a Final Order of Dismissal with Prejudice. Upon information and belief, there was no appeal from Judge Rushing's order.[2]

---

[2] Respondent notes in his memorandum that "Because of the age of the case, the Office of the Attorney general is no longer in possession of the records from the direct appeal, APCR, or APCR2. The direct appeal opinion and the Order from the APCR have been found in other files and are attached, but the procedural history from the APCR2 comes from it being recited in the APCR3.

Petitioner next filed a third Application for Post-Conviction Relief ("APCR3") on September 9, 1994 (94-CP-21-1111), in which she asserted the following issues:

1. Ineffective [sic] assistance in council [sic]–applicant feels that she was not tried fairly and/or properly–Applicant states that she was [not] aware of said crime until after had happened –Applicant feel [sic] that she received an excessive sentence.

The State filed a Return and Motion to Dismiss dated November 22, 1994. A hearing was held in the APCR3 before the Honorable B. Hicks Harwell, Jr., on October 31, 1995. Petitioner was present and represented by John Gaines, Esquire. On February 19, 1996, Judge Harwell issued an Order of Dismissal with Prejudice in which he dismissed the APCR3 as successive.

Upon information and belief, there was no appeal filed from the Order of Dismissal in the APCR3.

Petitioner next filed a fourth Application for Post-Conviction Relief ("APCR4") on November 29, 2006 (06-CP-21-1998), in which she asserted the following issues:

1. Ineffective Assistance of Counsel, Applicant was not tried fairly.

2. I was unaware of the crime until after it happened.

3. My witness was not allowed to take the stand.

4. I could have ran and disposed of the weapon.

The State filed a Return and Motion to Dismiss dated April 16, 2007.

On April 19, 2007, the Honorable Thomas A. Russo issued a Conditional Order of Dismissal giving Petitioner twenty (20) days to show why the action should not be dismissed as violative of the state PCR statute of limitations and bar against successive applications. Petitioner then submitted a letter to Judge Russo, dated April 26, 2007, in which she stated she wanted her DNA compared

to any DNA which could be found within a glove admitted at trial, and in which she stated her prior counsel failed to make this request. On June 6, 2007, Judge Russo issued an Final Order in which he found Petitioner's claims insufficient, and in which he dismissed the action as violative of the statute of limitations and bar against successive applications.

Petitioner filed with the state supreme court a pro se Notice of Intent to Appeal. On July 12, 2007, the Clerk of the South Carolina Supreme Court sent Petitioner a letter in which it advised her that Rule 227(c), SCACR required her to provide a written explanation as to why the dismissal was improper, or the action would be dismissed. On August 6, 2007, Petitioner sent such a letter to the Clerk, in which she contended she was innocent, that she had a mental disorder, and that it was not her fault if her previous counsel failed to request DNA testing. Petitioner followed with another undated letter to the clerk in which she asserted that if the inside of the glove did not contain any DNA, and if there was blood spatter on her co-defendant's coat, this would be akin to a recantation by her co-defendant. She also again stated she had a mental disability. On October 18, 2007, the South Carolina Supreme Court dismissed the appeal from the APCR4, finding Petitioner had failed to show an arguable basis as to why the determination of Judge Russo was improper. The remittitur was sent down on November 5, 2007. Petitioner then filed with the South Carolina Supreme Court a letter entitled "Motion to Reconsider". The Clerk of the South Carolina Supreme Court then responded with a letter dated November 27, 2007, in which he noted the issuance of the remittitur ended the state supreme court's jurisdiction of the matter.

## II. HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus, quoted verbatim:

| | |
|---|---|
| **Ground One:** | The State of SC has in its possession a Leather Glove that will exclude me as the Murder of Mrs. Wilson. |
| Supporting Facts: | I recently found out the state have the glove and requested that it be tested for any presence of my DNA in the glove. |
| **Ground Two**: | Prior to my conviction I sustain a wound to my right hand. |
| Supporting Facts: | This injury would have showed that I could not have killed the victim. |
| **Ground Three**: | An inadequate and unprofessional investigation. |
| Supporting Facts: | The state of South Carolina have Larkin Pea Coat in its p[o]ssession. |

## III.  SUMMARY JUDGMENT

On July 12, 2008, the Respondent filed a return and memorandum of law in support of his motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir.

1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the Petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since Petitioner filed her petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.  DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely. Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondent argues since Petitioner's conviction became final before the enactment of the AEDPA on April 24, 1996, she had until April 24, 1997, to file her federal habeas corpus action unless the period was at any time tolled. Respondent argues the following in the supporting memorandum:

> Petitioner's conviction was finalized by the conclusion of direct review on August 1, 1984, or ninety (90) days after May 3, 1984, the date the South Carolina Supreme Court issued the decision affirming Petitioner's convictions. . . Since Petitioner's conviction became final before the enactment of the AEDPA on April 24, 1996, she had until April 24, 1997, to file her federal habeas corups action unless the period was at any time tolled. . .
>
> Petitioner's APCR, APCR2, and APCR3 were filed and resolved prior to enactment of the AEDPA and thus does not toll the limitations period.
>
> Petitioner did not file her APCR4 until November 29, 2006, so three thousand eight hundred and seventy-one (3871) days of non-tolled time ran since the period of limitations began on April 24, 1996. Assuming for the moment but not conceding the APCR4 tolled the period of limitations, it would have been tolled during the pendency of the APCR until November 5, 2007, when the South Carolina Supreme Court issued the remittitur following the dismissal of the appeal from the APRCR4 Final Order. . . .
>
> The copy of the envelope in which the petition was mailed available on PACER does not reflect a visible prison mail room stamp with a date. However, the petition was both signed and mailed on February 5, 2008. Assuming this is the operable delivery date, ninety-two (92) days of non-tolled time accrued after the disposition of the APCR4. Thus, adding the two time periods, there were at least three thousand nine hundred and sixty-three days of non-tolled time since

9

> Petitioner's period of limitations began to run on April 25, 1996. This amounts to almost eleven (11) years.
>
> Moreover, the APCR4 does not toll anything anyway. The United States Supreme Court has held that a state collateral attack action not timely filed under the state statute of limitations is not a "properly filed" state collateral attack action under 28 U.S.C. 2244(d)(2) sufficient to toll the federal period of limitations. . . .Here, the APCR4 was dismissed as untimely, and this would add an additional three hundred and forty-one (341) days to the total, which would result in over eleven years of non-tolled time.
>
> Therefore, the present Petition for Writ of habeas Corpus is time-barred and should be denied and dismissed.

(Memorandum, document # 23).

Petitioner responded to the motion for summary judgment but did not directly address the limitations issue raised by Respondent. (Document # 39). In her petition, Petitioner stated in the form that the reason the one-year period of limitation does not apply is because"I was not aware that a DNA test could exclude me from this crime. Prior to my trial and during my trial I did not have any knowledge that a hand expert could determine it would not have been possibly[sic] for me to do this brutal stabbing." (Petition p.9).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[3] Subsection (d) of the statute now reads:

---

[3] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. Duarte v. Hershberger, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the <u>latest</u> of–
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

For convictions that became final before the AEDPA's effective date, the limitations period began on April 24, 1996. See <u>Harris v. Hutchinson</u>, 209 F.3d 325, 328 (4th Cir. 2000); <u>Brown v. Angelone</u>, supra. The period therefore expires on April 24, 1997 (absent tolling). See <u>Hernandez v. Caldwell</u>, 225 F.3d 435, 439 (4th Cir. 2000).

Petitioner's conviction became final before the AEDPA's effective date so she had until April 24, 1997, to file her habeas petition. Petitioner's conviction became final by the conclusion of direct review which was ninety (90) days after May 3, 1984, the date the South Carolina Supreme Court

issued the decision affirming Petitioner's conviction. Petitioners first, second, and third PCR applications were filed and resolved prior to the enactment of the AEDPA and, thus, did not toll the limitations period. The period of limitations began to run on April 24, 1996, the enactment date of the AEDPA. Petitioner filed her fourth PCR ("APCR4") on November 29, 2006. Accordingly, Petitioner's AEDPA period of limitations had already expired by the time she filed her fourth PCR Application.[4] Petitioner did not file her present habeas petition until January 16, 2008.[5] As Petitioner did not file her habeas petition before the expiration of the time period of April 24, 1997, it is barred by the statute of limitations.

The undersigned concludes there is no evidence that warrants equitable tolling. In the case of <u>Rouse v. Lee</u>, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would

---

[4] Even if she had filed her APCR4 before the one-year statute of limitations expired under the AEDPA, it would not have tolled the time period as it was dismissed as untimely under the state statute of limitations and, therefore, not a "properly filed" state collateral attack action under 28 U.S.C. §2244(d)(2).

[5] The Petitioner did not date the petition but the date the envelope was mailed was January 14, 2008. There is no visible mail room stamp with a date. In any event, the petition was clearly filed outside of the limitations period.

> loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Applying the law as described in Harris, Petitioner has not presented an extraordinary circumstance beyond Petitioner's control. Harris, 209 F.3d at 331. Likewise, it is well established that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Furthermore, based on the fact that Petitioner was found guilty in October of 1982, Petitioner had over twelve (12) years to pursue these claims before the AEDPA statute of limitations was

enacted. Therefore, there is no evidence that Petitioner exercised due diligence in pursuing an appeal on the issue of DNA, the peacoat, or the hand expert. Under long-established principles, Petitioner's lack of due diligence precludes equity's operation. *See*, Irwin, supra. "Equity should not be exercised to save an individual from his own failure to act or be based upon excuses which are little more than attempts to shift blame for the failure to act, rather than to explain an unfairness to external to the individual's acts." Tudor, supra.  Based on the fact that Petitioner has not shown any extraordinary circumstances to warrant equitable tolling, the undersigned finds that the petition is barred by the statute of limitations. Therefore, the undersigned finds that the Respondent's motion for summary judgment should be granted as the Petitioner's habeas corpus petition is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates that the Petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that Respondent's motion for summary judgment (document #22) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 28, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**